ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO.    4:07CR618-003 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John R. Adams |
| SHARON LEE GREGORY | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |
| | ) | |

**I.  Introduction**

This matter is before the Court for the sentencing of Defendant Sharon Lee Gregory.  On March 7, 2008, Gregory pled guilty to conspiracy to transport federally insured bank funds in interstate transport and interstate transport of stolen money in excess of $5,000.  The Court ordered and received a pre-sentence investigation and report related to the charges herein.  Gregory and the Government submitted objections and memoranda related to the report.  The Court sentenced Gregory in open court to 36 months for the reasons stated on the record and those contained herein.

**II.  Advisory Guideline Calculations**

The base offense level for Gregory's crimes is 6.  *See* U.S.S.G. § 2B1.1(a)(2).  A 20 level enhancement is appropriate as the acts herein resulted in a loss of more than $7,000,000.[1]  An additional two level enhancement is appropriate as Boyd derived more than $1,000,000 from a

---

[1] Gregory does not contest this finding.

financial institution.² U.S.S.G. § 2B1.1(b)(13)(A). A two level decrease is appropriate due to Gregory's minor role in the crime.³ U.S.S.G. § 3B1.2(b). Finally, upon the Government's recommendation, the Court granted a three level reduction for Dillon's acceptance of responsibility. The offense level under the advisory guidelines, therefore, is 23. With Gregory's criminal history level of I, the advisory guideline range on each count prior to any variance is 46 to 57 months imprisonment, 3 years of supervised release thereafter, a fine, and the appropriate special assessment.

### III. Objections and Arguments

Gregory has raised numerous arguments regarding the enhancements used by the Court. The Court addresses each of those arguments in turn.

#### A. $1,000,000 from a financial institution

U.S.S.G. § 2B1.1(b)(13)(A) provides as follows:

> If … the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, increase by 2 levels[.]

Gregory contends that this enhancement is inappropriate because there is no evidence of her share of the criminal proceeds. The Court finds no merit in this position.

Initially, the Court notes that it is undisputed that co-defendant Roger Dillon's employer did not own the money that was stolen, but that the money belonged to a financial institution. The Court has reviewed the law and has found no authority to suggest that the employer's status as a bailee in any manner effects the use of this enhancement. Instead, the Court reviewed and adopted the reasoning set forth in *United States v. Millar*, 79 F.3d 338 (2nd Cir. 1996) (applying

---

² Gregory's objection to this finding is addressed below.
³ Gregory's objection to this finding is addressed below.

the enhancement despite the fact that the robbery involved an armored car company and the funds were taken *directly* from a financial institution).

Gregory is also correct that none of the defendants ever expressed how the money was to be divided.  However, there is nothing to suggest that Gregory was not to share equally in the money.  Gregory was present in the trailer and joined in counting the nearly $8 million.  Even an unequal division of those proceeds would result in Gregory receiving in excess of $1 million. Consequently, the Court applied the two level enhancement under the facts presented.

### B. Minor or Minimal Participant

U.S.S.G. § 3B1.2 provides as follows:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels. If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

During the hearing, Gregory argued that she should be defined as a minimal participant.  The Court disagrees.

The Application Note to this guideline provides in relevant part as follows:

Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

Gregory's argument surrounding the application of this guideline is misplaced. Gregory focuses on her lack of knowledge of the specifics of the robbery. Gregory, however, was not convicted of that larceny offense. Rather, her convictions both focus upon the unlawful transportation of the stolen money. In that respect, there is no question that Gregory was involved in the purchase of the van used to transport that money. Further, Gregory was well aware that the van would be used to transport the proceeds of a crime. While she did not use her own funds, Gregory provided her identification and had the van titled in her name. Furthermore, she was a full participant in counting the money once it had been transported. Consequently, the Court finds that the minor role deduction is appropriate rather than a higher level deduction.

**IV.  Departure and Variance**

    **A.  Departure**

Gregory did not seek a downward departure in this matter.

    **B.  Variance**

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine an appropriate sentence and must offer a reasoned explanation for the sentence. Based upon those factors, the Court finds that a variance is appropriate under the facts presented in this matter.

In reaching its conclusion, the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. The Court must also review the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) to afford adequate deterrence to criminal

conduct and to protect the public from further crimes of the Defendant; and c) to provide the Defendant with needed educational or vocational training, medical care, and/or other correctional treatment in the most effective manner.

The nature and circumstances of this crime are as follows.  As detailed in the documents filed in this matter, Dillon began his employment with AT Security Systems in February of 2007.  In August of that year, Dillon stole $50,000 during a pick up from JP Morgan Chase Bank.  Dillon then began contemplating stealing an even larger sum of money from his employer.  Dillon began observing the security procedures currently in place and made note of the times during which the facility was unoccupied.  Furthermore, Dillon watched other employees use their access codes to the alarm system so that he could use those same codes at a later date.

In addition to planning the actual theft, Dillon and co-defendant Nicole Boyd also carefully concocted a cover story to explain their planned departure after the robbery.  During the week of October 22, 2007, Boyd and Dillon drove to Fayetteville, West Virginia.  While there, they rented a trailer located in Pipestem, West Virginia.  Dillon then used the initial $50,000 he had stolen to pay the rent and furnish the trailer where the two intended to hide following the robbery.  The two made all of their transactions using the names Michael Weaver and Samantha Capeli.  Dillon and Boyd told others that this trip was to Mexico and that they intended to take another trip there in the near future.

Dillon and Boyd also decided to commit this robbery on the days following the Thanksgiving holiday, knowing that the employer would have a substantial sum of cash on hand.  On the night of the robbery, Dillon and Boyd drove a van purchased in Gregory's name to Dillon's place of employment.  Dillon used the code of another employee to access the building, opened a

filing cabinet inside the office and removed a key to the security camera video tape. Dillon them removed the tape, but kept the lights off to avoid detection from any cameras of which he had no knowledge. Dillon and Boyd then loaded the van with close to $8 million in cash and checks and drove to West Virginia. The three co-defendants then spent several days counting the money before they were arrested. The Court also notes that the parties have indicated that this is one of the largest, if not the largest, robbery that has occurred in this District. The Court took that into consideration in imposing sentence in this matter.

With respect to the characteristics of Gregory, the Court notes as follows. Gregory is a 49 year old with two adult children. Gregory had her first child, co-defendant Dillon, in 1985. When Dillon was six months old, his father left the family. Gregory remarried, had a second child, but then divorced her second husband. Gregory's second husband received custody of their child. Gregory subsequently married and divorced twice more following that relationship.

Gregory began smoking marijuana in the 1980s. In 1985, she began smoking marijuana daily and continued to do so until 2007. Also beginning in 1985, Gregory began using cocaine on the weekends and continued to do so until roughly 2006. In February of 2007, Gregory began to extensively smoke crack cocaine.

During the hearing, Gregory expressed remorse for her conduct. In addition, she expressed remorse for being unable to convince Dillon to call off the robbery. It is apparent from viewing and listening to Gregory that she has had a lengthy history of substance abuse. She related to the Court her appreciation for being placed in a substance abuse program prior to trial. On the 29th day of this 30 day program, however, Gregory was removed from the program for smoking a cigarette. As such, she returned to jail while awaiting sentence. Gregory informed

the Court that she felt that this jailing was ultimately a blessing to her. According to Gregory, the months she has spent in jail are her longest period of sobriety since 1985.

The facts also demonstrate that Gregory was unaware of the full extent of the crimes at issue. She was told by Dillon that "something big" was going to happen just a few weeks before the robbery. While she readily acquiesced in the criminal activities for which she has pleaded guilty, she was largely in the dark with regard to Dillon's plans for the robbery.

Moreover, while it is through her choices that she abused drugs, the Court took into consideration her state of mind when she agreed to leave the state with Dillon. At that time, she was hopelessly addicted to crack cocaine and Dillon was the only family member with a close relationship to her. As Gregory explained to the Court, she could either go with Dillon following the robbery and risk going to jail, or she could remain behind. Remaining behind, she would have continued smoking crack until she died or was arrested. While her substance abuse offers no excuse for her criminal conduct, it does shed light on her culpability and her risk of reoffending.

Finally, the Court is aware of the extensive publicity that surrounded this crime because of the amount of stolen money. Given the depressed nature of the economy, especially that present in the area in which Dillon resided, these crimes may serve as encouragement for others to escape a life of poverty. As a result, the sentence imposed must be sufficient, but not greater than necessary, to deter others from following in the footsteps of these defendants. Accordingly, based upon all of the above facts, the Court found that a downward variance from the guidelines was appropriate. The Court concluded that a sentence of 36 months was sufficient but not greater than necessary to accomplish the goals of sentencing.

## V. Kinds of Sentences Available

The final calculated advisory guideline range of imprisonment is 46-57 months prior to the Court's variance. The maximum statutory penalty for Counts III is 10 years imprisonment, a $250,000 fine, and 3 years of supervised release, and for Count II is 5 years imprisonment, a $250,000 fine, and 3 years of supervised release.

## VI. Sentencing Disparities

When imposing sentence in the matter, the Court was cognizant of the co-defendants. On the day prior to Gregory's sentencing, the Court sentenced Boyd to 60 months in prison, and earlier on the day of this sentencing, the Court sentenced Dillon to 96 months. Furthermore, prior to any of the defendants' sentencing, the Court had reviewed the sentencing memoranda filed by Boyd, Dillon, and Gregory. It is the Court's view that Boyd was significantly less culpable than Dillon, but more culpable than Gregory. While Boyd readily agreed to participate in the robbery, Boyd did little in the way of planning the heist. Instead, the statements of the defendants revealed that Dillon developed the plan used to execute the robbery and Dillon stole the initial $50,000, without Boyd's knowledge, that was used to fund the robbery preparations. Boyd, however, was more involved than Gregory. She was present at the facility when Dillon entered the vault, and she assisted in arranging the money that Dillon was placing in the getaway vehicle. Gregory on the other hand, was not present for these events and appears to have known very few of the specifics of the plan. Unlike her co-defendants, Gregory's involvement was isolated to incidents surrounding the transportation of the money and she was not involved in the robbery itself. The Court was mindful of the defendants' respective culpability levels when it imposed sentence in this matter.

**VII.  Conclusion**

Based upon the above reasoning, pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553(a), it is the judgment of the Court that the Defendant Sharon Lee Gregory is hereby committed to the Bureau of Prisons for a term of 36 months.    Dillon is sentenced to 36 months on Counts II and III.   These sentences are to run concurrently.

The Court finds that Gregory does not have the ability to pay a fine and therefore waives the imposition of any fine.   Gregory must pay to the United States a special assessment of $200, which shall be due immediately.   In addition, the three co-defendants are jointly and severally liable for restitution in the amount of $1,435.   Following her release, Gregory will be subject to three years of supervised release with the conditions set forth on the record.

IT IS SO ORDERED.


August  1, 2008                                    /s/John R. Adams
Date                                            JOHN R. ADAMS
                                                UNITED STATES DISTRICT JUDGE